IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAFEGUARD SCIENTIFICS, INC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 09-380-RGA |
| : | |
| SAINTS CAPITAL DAKOTA, L.P., et al., : | |
| : | |
| Defendants. : | |

**MEMORANDUM**

In terms of the issues that have been raised, I have the following thoughts/rulings.

1. Defendant's definition of "willful breach" (D.I. 153) is not right. The Defendant proposes the definition used in Hexion, but that was for "knowing and intentional breach" and was noted as being quite different from "willful breach." 965 A.2d at 747. In terms of defining it, I would consider that it is part of a phrase "fraud or willful breach or misconduct" and should therefore be construed in pari materia with "fraud" and "misconduct." I would like the parties to consider this and submit any proposals by 8 p.m. on Monday. While not controlling, Vice-Chancellor Strine understood a similar phrasing to be similar to fraudulent intent, that is, an intentional failure to disclose something known to be false. Ameristar Casinos, 2010 WL 1875631(Del. Ch. May 5, 2010).

2. On the issue of lost profits, the Court understands that the point in dispute is whether Saints can offer evidence that Laureate earned less profits because of the condition of the fill room as compared to what Laureate would have made if the fill room had been in better condition. I understand the premise to be that there were fewer contracts for whatever Laureate

manufactures using the fill room than there would have been had the Laureate facility met the warranty. I am inclined to think that under the circumstances of this case as I currently understand them that these lost profits are not direct damages. In other words, lost profits are consequential damages. I cannot conclusively rule on this in advance. I am not sure whether I have the expert reports on "lost profits." Could I be provided with these reports, or directed to where they are if they are already somewhere in the record.

3. On the customer inspection reports, I think the customer comments are hearsay. The responses are hearsay too. I do not think the reports are business records within the meaning of the Rule 803(6). That being said, Defendant can bring its witnesses for an out-of-the-presence of the jury hearing at 8:30 a.m. Tuesday during which it can lay whatever foundation it can for the premise that the reports are business records. One thing that makes me doubtful about the reports being "business records" is that from what I have seen, the format seems to be "he said, she said," which seems to me to be the antithesis of what a business record should be, that is, something that has a high degree of accuracy because of the routine and repetitive nature of the matter being recorded.

The reports might be admissible to prove the "state of mind" of various people. I wonder though what the relevance of Laureate's state of mind is. I also wonder about the relevance for the jury of Saints' state of mind. (Both parties at the pretrial conference seemed to agree that whether Saints had brought the indemnification claims in good faith was a question for me, not the jury.). On the other hand, what Safeguard knew seems as though it might be relevant to the "willful breach" claim. Of course, that would require some evidence that Safeguard had the customer inspection reports before the closing. (It might also require something else to be

relevant.).

None of this is to say that Ms. Carlin cannot testify based on personal knowledge.

4. Generally-speaking, the quality of Saints' due diligence is irrelevant. If a Saints witness testifies that the witness learned something after the sale that the witness had not known prior to the sale, Safeguard can cross-examine to show that the witness did know the thing before the sale, or that someone else at Saints knew the thing, but cannot cross-examine to say the witness should have known/would have known but for poor due diligence.

4/1/13
Date

_____
U.S.D.J.